UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK HOFFMAN,

        Plaintiff,                  Case No. 2:20-cv-13264

                                                District Judge Gershwin A. Drain

v.                                    Magistrate Judge Anthony P. Patti

UNITED STATES of AMERICA,

        Defendant.

_____/

## REPORT AND RECOMMENDATION to DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 47)

**I.**    **RECOMMENDATION**: The Court should **DENY** Plaintiff, Mark

Hoffman's Motion for Summary Judgment (ECF No. 47.)  Defendant, the United

States of America, has withdrawn its Motion for Summary Judgment (ECF No.

41), so no ruling is necessary. (*See* ECF No. 57.)

**II.**    **REPORT:**

    **A.**    **Background**

        **1.**  **Factual Background for both Parties' Motions (ECF Nos. 41 and 47)**

    Even though Defendant withdrew its motion, the operative facts for

Plaintiff's summary judgment motion are the same as those for Defendant's

1

motion.  Plaintiff relies on his affidavit (Hoffman Aff., ECF No. 32)[1] to outline the
relevant facts for both motions.  Plaintiff further relies on identical exhibits in both
his summary judgment motion and his response to Defendant's motion. (*See* ECF
No. 47, PageID.454; *see also* ECF No. 45, PageID.417.)  The facts of the case,
taken from the record put forward in the two summary judgment motions, are as
follows:

Plaintiff Mark Hoffman, proceeding *in pro per*, was incarcerated at the
Milan Federal Correctional Institution ("FCI Milan") at all times relevant hereto.
On the night of January 18, and the morning of January 19, 2020, FCI Milan
experienced heavy snowfall and freezing temperatures. (ECF No. 41-2.)  On
January 19, 2020, at approximately noon, Plaintiff left his housing unit to visit FCI
Milan's leisure room. (ECF No. 41-3, PageID.394.)  He intended to go to the
leisure room to ask for a job and to look at an art supply catalog. (*Id*.)  The path
between Plaintiff's unit and the leisure room includes an outdoor walkway. (ECF
No. 41 at 2 ¶ 5; *see* Hoffman Aff. ¶ 4).  Plaintiff noticed the walkway to the leisure
room was not shoveled or salted, despite the recent snowstorm. (ECF No. 41 ¶ 8;
Hoffman Aff. ¶ 7.)  Nonetheless, Plaintiff decided to venture outside to head to the

---

[1] Plaintiff's affidavit, quoted and cited for convenience throughout this R&R
simply as the "Hoffman Aff.," appears in the record as ECF No. 32, PageID.234-
236, ECF No. 45, PageID.418-420, and yet again as ECF No. 47, PageID.455-457.

leisure room.  He followed 50 to 60 other prisoners, who were also headed to the leisure room. (ECF No. 41, PageID.379, ¶ 6; Hoffman Aff. ¶ 3.)

Plaintiff reported he was aware the path may be slippery, so, to avoid slipping, he walked in the footsteps of the inmates ahead of him. (ECF No. 41, PageID.379, ¶¶ 8-9; Hoffman Aff. ¶ 4.)  As an additional precaution, Plaintiff claims he "took short steps and watched the ground" as he walked. (Hoffman Aff. ¶ 4).  Despite these precautions, after walking about 20 feet along the path, Plaintiff slipped on a patch of ice. (ECF No. 41, PageID.379, ¶ 10; Hoffman Aff. ¶ 5.)  The fall injured Plaintiff's hands, left shoulder and back. (Hoffman Aff. ¶ 5.)

Later that evening, Plaintiff talked with an FCI Milan employee, Officer Queen, about his fall.  Plaintiff claims Queen told him that a snow crew was supposed to shovel and salt the pathway at issue but did not. (Hoffman Aff. ¶ 8.) Officer Queen's story is corroborated by FCI Milan's daily log, which reads "Snow Crew #1 Activated" at 5:30 a.m. (ECF No. 45, PageID.430.)  Upon further investigation, Plaintiff discovered that an FCI Milan Officer, Brian Ackley, fell in the same spot as Plaintiff approximately six hour earlier. (ECF No. 45, PageID.428.)  Ackley notified other Milan employees of his fall. (*Id*.) Nonetheless, Milan did nothing to address the black ice in the six hours between Ackley's fall and Plaintiff's fall.

3

Plaintiff also discovered the icy patch where he and Officer Ackley fell was likely formed from an unnatural cause.  On February 10, 2020, FCI Milan's Recreation Specialist, Cierra Joshua, submitted a work request to get "the gutter re-routed around the gym to help prevent black ice from forming at the outer corner of the gym." (ECF No. 45, PageID.431.) [2]  In Joshua's words, the formation of ice due to gutter runoff created "serious hazard conditions, especially for staff." (*Id*.)

Lastly, on July 6, 2020, Plaintiff and Officer Queen observed the gutter downspout that deposits water onto walkways. (Hoffman Aff. ¶ 14.)  Plaintiff claims he suggested FCI Milan staff should "remove the downspout drain at the base of the gate, because the water that drains from it in the winter pours on to the walkway and causes black ice to form under the snow." (*Id*.)  Officer Queen responded that "they were aware of [the problem]" and were "looking into it." (*Id*.)

Plaintiff now brings suit, claiming Defendant was negligent because it knew a gutter downspout was causing the unnatural accumulation of ice on FCI Milan walkways yet failed to warn or protect FCI Milan inmates from the danger.

### 2.  Procedural Background

On December 4, 2020, Plaintiff filed the instant action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), against five FCI Milan

---

[2] Under Fed. R. Evid. 407, these subsequent remedial measures may not be admissible, or may only have limited admissibility.

employees.  Originally, he pleaded Eighth Amendment violations and various misfeasances related to snow and ice removal, his resulting slip and fall on ice at FCI Milan, and his lack of medical treatment for consequent injuries, further noting that he had filed grievances in connection with this incident for a federal tort claim. (ECF No. 1.)

The FCI Milan employees moved to dismiss Plaintiff's claim. (ECF No. 11.) The Court granted the motion to dismiss but found Plaintiff's complaint contained a claim for negligence under the Federal Tort Claims Act and substituted the United States as the only Defendant. (ECF Nos. 24, 25.)  Plaintiff then filed an amended complaint focusing on the United States' alleged negligence for failing to clear ice and snow that led to his fall. (ECF No. 28.)

### B.    Instant Motion

On December 2, 2022, after discovery had closed, Defendant filed a Motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Defendant claimed it was entitled to summary judgment on Plaintiff's negligence claim because it did not have a duty to warn or protect Plaintiff from the wintery conditions causing his fall. (ECF No. 41.)  Defendant further claimed it had no duty to warn or protect because the dangers of the wintery conditions were open and obvious and because no special aspects existed that would trigger a legal duty despite the obvious danger of the wintery conditions. (*Id*. PageID.382, 385.)  However, after the parties

5

filed their motions, the Michigan Supreme Court decided *Kandil-Elsayed v. F & E Oil, Inc.*, No. 162907, 2023 WL 4845611 (Mich. July 28, 2023).  In light of *Kandil-Elsayed*, which will be discussed in greater detail below, and the Court's text order directing Defendant to reconsider its position in the aftermath of that decision, Defendant withdrew its motion. (ECF Nos. 56, 57.)

On February 13, 2023, Plaintiff filed a Cross-Motion for Summary Judgment. (ECF No. 47.)  Plaintiff's motion mirrors his response to Defendant's motion. He claims he is entitled to summary judgment because there is no triable issue of fact that Defendant was negligent when it failed to warn or protect Plaintiff from the icy conditions on FCI Milan's walkways despite knowledge of their existence. (*Id.*, PageID.448.)  In response, Defendant contends there is, at minimum, a question of fact as to whether it owed Plaintiff a duty because the icy conditions were open and obvious, the Defendant took reasonable measures, and Plaintiff was at least comparatively negligent. (ECF No. 52, PageID.486-487, 489.)

### C.    Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views

6

the evidence, all facts, and any inferences that may be drawn from the facts in the

light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley*

*Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . .." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion."). "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC*

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

2011) ("The nonmovant must, however, do more than simply show that there is

some metaphysical doubt as to the material facts . . ..  [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving

party to create a genuine dispute") (internal quotation marks and citations omitted).

Moreover, "the mere existence of a scintilla of evidence that supports the

nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . .." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that the parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records,* 329 F.3d 437, 444 (6th Cir. 2003). Instead, the Court must apply the well-recognized summary judgment standards when deciding such cross motions: The Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.,* 336 F.3d 503, 506 (6th Cir. 2003).

Further, the fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338,

344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary

judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema*

*N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"

*Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788

(6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315

(11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary

judgment, a party cannot rely on allegations or denials in unsworn filings and that a

party's "status as a pro se litigant does not alter [this] duty on a summary judgment

motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a pro se plaintiff because he "failed to present

any evidence to defeat the government's motion").

### D.    Analysis

Defendant withdrew its motion, and the Court should deny Plaintiff's

motion. This report will briefly discuss the applicable law for this case before

turning to the Plaintiff's motion.

### 1.  Applicable Law

Plaintiff brings his negligence claim against Defendant, the United States,

under in the Federal Tort Claims Act. Generally, sovereign immunity prevents suit

against the United States without its consent. *United States v. Mitchell,* 463 U.S.

206, 212 (1983).  However, the Federal Tort Claims Act waives sovereign immunity for certain civil actions, such as the negligence claim before the Court. *See Premo v. United States*, 599 F.3d 540, 544 (6th Cir. 2010); 28 U.S.C. § 1346(b)(1).  The Federal Tort Claims Act does not, however, create a cause of action.  Liability is determined using local law. *Premo*, 599 F.3d at 544.  In this case, the alleged negligence occurred in Michigan, so the Court should use Michigan law to determine liability.

### 2.  Plaintiff's Motion for Summary Judgment (ECF No. 47)

Plaintiff's negligence claim is based on an allegedly dangerous condition in existence on the grounds of FCI Milan on January 19th, 2020, the day of his fall. (*See* ECF No. 28 at 4.)  "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land*." Buhalis v. Trinity Continuing Care Servs.*, 296 Mich. App. 685, 692, 822 N.W.2d 254, 258 (2012) (citing *James v. Alberts,* 464 Mich. 12, 18–19, 626 N.W.2d 158 (2001)). When, as here, the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence. *Id*.  Still, "[i]n a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Id*.  So, to succeed at summary judgment, Plaintiff

10

must show that, as a matter of law, he can satisfy all four elements above.  The

Court should find Plaintiff cannot meet this burden because there is a question of

fact whether Defendant breached its duty to Plaintiff.

### i. Duty

The Court should find that Defendant owed Plaintiff a duty.  On July 28,

2023, the Michigan Supreme Court announced a dramatic change to premises

liability for invitees—particularly with respect to the duty and breach elements.

*Kandil-Elsayed*, WL 4845611.  The old way was governed by *Lugo v. Ameritech*

*Corp. Inc.*, 464 Mich. 512, 629 N.W.2d 384 (2001). Under *Lugo*, whether a

premises possessor owed a duty to an invitee depended largely on the open and

obvious doctrine.  The open and obvious doctrine worked in two phases.  First, "a

premises possessor owe[d] a duty to an invitee to exercise reasonable care to

protect the invitee from an unreasonable risk of harm caused by a dangerous

condition on the land."  However, this duty did not generally encompass removal

of open and obvious dangers. *Lugo*, 464 Mich. at 516 (internal citation omitted).

"Whether a danger [was] open and obvious depend[ed] on whether it [was]

reasonable to expect that an average person with ordinary intelligence would have

discovered it upon casual inspection." *Hoffner v. Lanctoe,*, 492 Mich. 540, 461,

821 N.W.2d 1117 (2012).  Second, even if a danger was open and obvious, a

premises possessor could still owe a duty if a special condition existed.  That is,

11

"despite [a condition's] obviousness or despite knowledge of it by the invitee, the circumstances may be such that the invitor is required to undertake reasonable precautions." *Lugo*, 464 Mich. at 516–17.  In sum, under *Lugo*, "the general rule [was] that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id*. at 517.

In *Kandil-Elsayed*, the Michigan Supreme Court overruled *Lugo* and reshaped the duty element in two ways.  First, the Court held "the *Lugo* Court erred by situating the open and obvious danger doctrine and any exceptions to it in duty." *Kandil-Elsayed*, 2023 WL 4845611, at \*18.  The Court found it more appropriate to analyze the open and obvious doctrine when addressing breach and damages because "Michigan is a comparative-fault jurisdiction, meaning that it is the policy of our state that when a plaintiff is at fault, it does *not* bar recovery, but rather reduces the amount of damages they can recover by their percentage of fault." *Id*.  Further, the Court found the open and obvious doctrine was improperly housed under the duty element because "functionally, by situating the open and obvious danger doctrine in duty, the plaintiff's comparative fault has become an integral part of the duty analysis.  Practically, what this means is that a plaintiff's fault works to cut off liability in full, directly against the policy of this state." *Id*.

12

Second, the Court overruled the special aspects doctrine "to the extent that it departed from the anticipation-of-harm standard in § 343A of the Second Restatement." *Kandil-Elsayed*, 2023 WL 4845611, at *23. Now, instead of special aspects, a factfinder should consider whether the premises possessor should anticipate harm, despite the fact that a condition is open and obvious. *Id*.

In announcing its new standard, the Court also reaffirmed several aspects of premises liability that remain in effect. First, the traditional duty owed to invitees is the same—premises possessors owe invitees a "duty to exercise reasonable care to protect [them] from an unreasonable risk of harm caused by a dangerous condition of the land." *Kandil-Elsayed*, 2023 WL 4845611, at *22 (quoting *Williams v Cunningham Drug Stores, Inc*, 429 Mich. 495, 499, 418 N.W.2d 381 (1988)). Second, "the three traditional status-based categories—licensee, invitee, and trespasser—remain" in effect. *Kandil-Elsayed*, 2023 WL 4845611, at *22. Third, the test for when a danger is open and obvious—whether it is "reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection"—remains the same. *Id*. (quoting *Hoffner*, 492 Mich. at 461). However, the open and obvious inquiry is now considered with respect to the defendant's breach and the plaintiff's comparative fault.

In applying this new standard to the case at hand, there is no question that Defendant owed Plaintiff a duty. Defendant concedes that Plaintiff, as an FCI

Milan inmate, is an invitee. (*See* ECF No. 52, PageID.486-487.)  As *Kandil-Elsayed* reaffirms, a premises possessor owes a "duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Kandil-Elsayed*, 2023 WL 4845611, at *24.

### ii.  Breach

Since Defendant owed Plaintiff a duty, the Court must decide whether Defendant breached that duty.  Generally, whether a duty is breached is a question of fact reserved for a jury. *Kandil-Elsayed*, 2023 WL 4845611, at *24, n.28.  In this case, the Court should follow that general rule.

The record contains facts supporting both Plaintiff's claim of negligence and Defendant's claim that it did not breach its duty because the icy conditions on FCI Milan's walkways were open and obvious.  On one hand, Plaintiff offered evidence, in the form of emails from FCI Milan staff, indicating the gutter system above the rec yard was malfunctioning, and that staff members were aware of the malfunction, at least at some point. (*See* ECF 47, PageID.469.)  Plaintiff also offered evidence showing the area where he fell was a problem area.  He produced emails and accident reports from multiple FCI Milan staff members indicating they slipped on ice in the same area as Plaintiff; indeed, one staff member even fell on the same day as Plaintiff six hours prior. (*See* ECF No. 47, PageID.466, 469, 470.) In sum, Plaintiff produced evidence showing Defendant breached its duty by

14

failing to warn against or remove the snowy and icy conditions in the rec yard, because: (1) staff members were aware the gutter system was depositing water on walkways and forming black ice; (2) multiple staff members and inmates slipped on ice near the gutter downspout; and, (3) despite Defendant's knowledge of the dangerous condition and the history of falls, staff members did nothing to fix the gutter or corresponding icy conditions. (*See* ECF No. 47, PageID.448-449.)

On the other hand, Defendant produced evidence that it did not breach its duty because the dangers of the walkways were open and obvious.[3]  That is, an average person with ordinary intelligence would have discovered the danger of the walkways upon casual inspection. *See Hoffner*, 492 Mich. at 461.  It is undisputed that, prior to Plaintiff's incident, FCI Milan experienced heavy snowfall and freezing temperatures. (ECF No. 41-2.)  Further, Plaintiff commented to Officer Queen and a nurse that the outdoor walkways had not been shoveled or salted since the storm "like the rest of the compound and I slipped and fell." (ECF No. 41 ¶ 8; Hoffman Aff. ¶ 7.)  In fact, he states in his declaration that he took certain precautions to keep from slipping and falling: "As I followed the other inmates, I thought it best to follow their foot steps [sic] so that I wouldn't slip and/or fall.  As

---

[3] In its response to Plaintiff's motion, Defendant indicated that it is relying on the exhibits and analysis in its own summary judgment brief (ECF No. 41) when arguing the conditions at FCI Milan were open and obvious.  Thus, the Court still considers it in response to Plaintiff's motion.

15

I looked down, I took shortsteps [sic] and watched the ground as I followed."

(ECF No. 45, PageID.418, ¶ 4; see also, ECF No. 32, PageID.234, ¶ 4.)  In other

words, Plaintiff was at least somewhat aware of the conditions as he ventured onto

the sidewalk.[4]

Separately, Defendant also produced evidence that it took reasonable

measures to warn or protect Plaintiff from the icy walkways. According to FCI

Milan's daily log, Defendant activated a snow crew at 5:30 a.m. to shovel and salt

the area in question. (ECF No. 47, PageID.468.)  The record does not make clear

why the snow crew ultimately did not shovel the area in question.

Within the past week, this Court has confronted very similar issues in yet

another black ice slip and fall premises liability case against Lowe's Home

Centers, in which a failure to salt was alleged.  Applying *Kandil-Elsayed*, the

Court concluded that "here questions of fact remain as to whether Lowe's acted

reasonably in salting the lot the morning of plaintiff's alleged fall." *Vacaj v.*

*Allstate Ins. Co. and Lowe's Home Centers, LLC*, No. 22-10223, 2023 WL

---

[4] Plaintiff also offers the declaration of his fellow prisoner, Robert Ocampo (ECF No. 32, PageID.237), under 28 U.S.C. § 1746 (incorrectly styled as an affidavit) as a supplement to his pleadings, which the Court permitted by prior order. (ECF No. 35, PageID.253.)  While the Court acknowledges that declaration, Ocampo adds nothing to the analysis of breach, open and obvious danger or comparative fault, as he only states that he saw "directly in front of me on the walkway" and later learned of Plaintiff's slip and fall and that Plaintiff appeared to have gotten medical attention. (ECF No. 32, PageID.237, ¶¶ 3, 5.)  Nothing is said about prior conditions.

5105051, at *3 (E.D. Mich. Aug. 9, 2023) (Freidman, J.).  Likewise, in the instant

matter, the Court should deny Plaintiff's motion, finding a question of fact on the

breach element.  At this stage, it is not the Court's duty to weigh Plaintiff's

evidence against Defendants.  Under *Kandil-Elsayed*, a jury should decide whether

Defendant breached its duty despite the alleged obviousness of the danger of the

icy walkways.  In the event a jury does find breach, it should also have the

opportunity to determine if Plaintiff's was comparatively negligent under Michigan

law and reduce damages accordingly.

### E.    Conclusion

For the reasons set forth in greater detail above, the Court should find

Plaintiff has failed to show, as a matter of law and through undisputed facts, that

Defendant was negligent.  Accordingly, the Court should **Deny** Plaintiff's Motion

for Summary Judgment. (ECF No. 47.)  The Court need not rule on Defendant's

Motion (ECF No. 41), as it was withdrawn.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation but are required to file any objections within 14 days of service,

as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to

file specific objections constitutes a waiver of any further right of appeal. *Thomas*

*v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d

505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 14, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

18